### PEOPLE ex rel. WOGAN v. RAFFERTY.

(Supreme Court, Kings County, Trial Term. June 11, 1912.)

1. CONSTITUTIONAL LAW (§ 45*)—STATUTES—VALIDITY—DUTY OF COURTS.

A state statute is valid and enforceable unless it is in conflict with the constitutional limitations; but, when attacked for such conflict, the courts not only may, but must, take jurisdiction to determine the constitutional questions raised.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 42; Dec. Dig. § 45.*]

2. CONSTITUTIONAL LAW (§ 70*)—STATUTES—VALIDITY—QUESTIONS REVIEWABLE.

The court in determining the validity of a statute can only consider whether it violates constitutional restraints and prohibitions, and cannot adjudge a statute invalid because it is unwise, impracticable, or unreasonable.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

3. CONSTITUTIONAL LAW (§ 45*)—STATUTES—VALIDITY.

An inferior court may declare a statute invalid, though there is a right of appeal.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 42; Dec. Dig. § 45.*]

4. CONSTITUTIONAL LAW (§ 48*)—STATUTES—VALIDITY.

In cases of doubt, a statute will not be adjudged repugnant to the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

5. CONSTITUTIONAL LAW (§ 47*)—STATUTES—VALIDITY—LEGISLATIVE, EXECUTIVE, AND JUDICIAL ACTION—EFFECT.

The legislative, executive, and judicial attitude towards a prior statute not attacked as unconstitutional is not conclusive on the validity of a subsequent statute similar in its operation when its constitutionality is questioned.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 47.*]

6. COUNTIES (§ 62*)—OFFICERS—APPOINTMENT—STATUTES—VALIDITY.

Laws 1911, cc. 640, 826, empowering the county clerk of Kings county to appoint a deputy to be known as the chief clerk for the County Court, to hold office for five years, authorize the county clerk to appoint a deputy to hold office for five years and thereby continue after the term of the county clerk making the appointment, and are not invalid as depriving the county clerk, a constitutional officer, of powers and privileges which have been exercised by his predecessors from time immemorial with respect to the County Court of the county.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 87–90; Dec. Dig. § 62.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7.** Counties (§ 62\*)—County Court—Chief Clerk—Statutory Regulations.
Under Const. 1846, art. 10, §§ 1, 2, and Const. 1894, art. 10, §§ 1, 2, providing that county officers whose election or appointment is not provided for by the Constitution shall be elected or appointed as the Legislature shall direct, and all special officers whose election or appointment is not provided for by the Constitution shall be elected or appointed, the Legislature has absolute power to regulate the manner of the selection of the office of chief clerk of the County Court of Kings county; the chief clerk being a county officer subject to the power of the Legislature to direct the manner of his election or appointment.
. [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 87–90; Dec. Dig. § 62.\*]

**8.** Constitutional Law (§ 43\*)—Statutes—Validity—Estoppel.
Where the Legislature created the office of chief clerk of the County Court of Kings county as an office distinct from, but under the supervision of, the county clerk of Kings county, and the county clerk recognized the act as valid and appointed one as chief clerk of the County Court, and the appointee recognized the appointment and qualified and performed the duties of the office under the appointment, both were estopped from maintaining that there was no such separate office as chief clerk of the County Court apart from the office of county clerk of Kings county, and they could not contest the validity of Laws 1911, cc. 640, 826, empowering the county clerk to appoint a deputy to be known as chief clerk of the County Court on the ground that the same are repugnant to the constitutional rights of the county clerk to be himself chief clerk of the County Court.
[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. § 43.\*]

**9.** Quo Warranto (§ 55\*)—Action to Test Right to Public Office—Burden of Proof.
In an action by the people to test the right to hold a public office, the burden rests on defendant to show by what authority he holds the office.
[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. §§ 63–65; Dec. Dig. § 55.\*]

Quo warranto by the People, on the relation of Thomas F. Wogan, against John T. Rafferty, to test the title to the office of Chief Clerk for the County Court of Kings County. Judgment for plaintiff.

Thomas Carmody, Atty. Gen. (Henry P. Molloy, of counsel), for plaintiff.

Hugo Hirsh, for defendant.

BENEDICT, J. This action, which was tried before the court without a jury, was in the nature of quo warranto brought under the provisions of the Code of Civil Procedure by the people of the state of New York, upon the relation of Thomas F. Wogan, against John T. Rafferty, to test the title to the office of chief clerk of the County Court of Kings county.

Upon the trial the facts in the case were stipulated between counsel and are undisputed. Briefly stated, they are as follows: On November 7, 1902, Charles S. Devoy was appointed to the office of chief clerk of the County Court of Kings county by the county judges of said county, for a term of five years, under the authority conferred upon them by chapter 612 of the Laws of 1902, and on May 23, 1907, was reappointed for a further term of five years by the said judges

---

\*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under authority of chapter 352, Laws of 1907. On the 30th day of June, 1911, he resigned the said office, and thereupon Henry P. Molloy, who was then county clerk of the county of Kings, acting under the authority of chapter 35 of the Laws of 1909, known as the "Judiciary Law," as amended by chapters 640 and 826 of the Laws of 1911, appointed the relator herein, Thomas F. Wogan, to be chief clerk of the County Court of Kings county for the term of five years from July 13, 1911. Said Wogan duly qualified as prescribed by law and entered upon the discharge of the duties of such office and served therein and received the salary attached to said office until the end of the year 1911, when said Henry P. Molloy's term of office expired. On January 1, 1912, Charles S. Devoy then and now the county clerk of Kings county, claiming that the relator's appointment to be chief clerk of the County Court had terminated with the expiration of the term of office of the former county clerk, refused to recognize relator as holding said office, and appointed the defendant herein, John T. Rafferty, as "deputy county clerk of Kings county to act and be known as the chief clerk of the County Court of Kings county," his term beginning on January 1, 1912. The defendant thereupon entered into the last-mentioned office and ousted the relator therefrom; and he has duly qualified and filed his oath of office, and since the 1st day of January, 1912, has been acting exclusively as the chief clerk of the County Court of Kings county and has been and now is in receipt of the salary attached to said office.

This action was begun by the Attorney General on behalf of the people of the state on or about the 11th day of March, 1912; the statutory indemnity having been given by the relator. The relator claims title to the office in question for the term of five years from the 13th day of July, 1911, under the appointment made by Henry P. Molloy, then county clerk of Kings county, pursuant to the statutes above mentioned. The defendant claims, on the other hand, that the Judiciary Law, as amended by chapters 640 and 826 of the Laws of 1911, is unconstitutional and void, in that these amendments take away or attempt to take away from the county clerk of Kings county the latter's constitutional powers and duties as clerk of the County Court and transfer them to a stranger not appointed by him and with a term extending for three years beyond his own term of office.

As I view it, the issues involved in this controversy depend for their solution solely upon the inquiry whether the two acts of the Legislature above referred to are or are not in conflict with the provisions of the Constitution of this state. If these acts do not violate the Constitution, the plaintiff is entitled to the relief sought in this action; if they do violate it, then the defendant must succeed.

Under the form of government which we in this state enjoy, all political power resides in and proceeds from the people in their sovereign capacity. This rests upon the great constitutional maxim "that all power is inherent in the people." As it would have been an impossibility for all the people of the state to meet from time to time in the persons of their qualified electors for the purpose of establishing laws, the representative form of government was adopted, by which cer-

tain persons are chosen to act for and represent the whole body politic in its lawmaking power and in the name of the people of the state, to make such laws as may be required for the common good. These representatives of the people constitute the legislative or lawmaking body.

In order to perpetuate certain principles of government which were deemed, from past experience, to be essential to the liberty, peace, and prosperity of the state and to the maintenance of individual rights, the people of this state adopted in 1777 a frame of government or Constitution, binding not alone upon the people themselves, but upon their representatives in the Legislature, their executive authority and their courts of justice as well. The grounds upon which this doctrine rests were considered at length in connection with the Constitution of the United States, by the Supreme Court in Marbury v. Madison, 1 Cranch, 137, 176, 177, 2 L. Ed. 60. The Constitution was in writing, and consisted of a number of fundamental principles which, having been adopted by the people, were thenceforth only alterable or repealable by action of the people themselves. Its mandate, coming directly from the people, was and is superior to the will of the Legislature. It is susceptible of interpretation only by a tribunal established pursuant to its provisions, and in such tribunal alone resides the power to determine whether acts of the Legislature conflict with its provisions or not; and in case they be found to be repugnant, then to declare them void.

[1] It follows, therefore, that unless the legislative will as expressed in laws is found to be repugnant to the Constitution of the state, it is paramount and binding upon the courts, and the only function with which the courts are invested with regard to such laws as do not so conflict, is to apply or enforce them, if they be plain, or to interpret them, if they be ambiguous, and when so interpreted to apply them.

The Legislature, speaking for the people, is therefore entitled to the support of the courts in the enforcement of the people's will as expressed in laws enacted by the Legislature, unless that will comes into conflict with such constitutional limitations and restrictions as the people have themselves adopted and imposed.

From these propositions, which I take to be fundamental and self-evident, have sprung certain principles which have guided the courts in the determination of the question whether a given statute does or does not conflict with constitutional provisions. Some of these principles are as follows:

The right and duty of the judiciary to take jurisdiction and decide cases when constitutional questions are presented are both imperative and inseparable. As Chief Justice Marshall said, in Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257, in speaking on this point:

"It is most true that this court will not take jurisdiction if it should not, but it is equally true that it must take jurisdiction if it should."

See, also, Ex parte Davis, 41 Me. 38, and Justice's Answers, 70 Me. 570, at page 599.

[2] Again, a violation of constitutional restraints and prohibitions is the only permissible ground for calling upon the courts to determine the validity of a statute, and the unwisdom, impracticability, unreasonableness, or injustice of the enactment furnishes no ground for interposition. As was said by the Court of Appeals in People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465, Judge Peckham writing:

"It has been frequently held, and is acknowledged by all courts as the undoubted and true rule, that a statutory enactment will not be declared unconstitutional, and therefore void, unless a clear and substantial conflict exists between it and the Constitution. It has been further held that every presumption is in favor of the constitutionality of legislative acts; that the case must be practically free from doubt before an act of the Legislature should be declared unconstitutional; that as to our state Constitution the question whether a statute is a valid exercise of legislative power is to be determined solely by reference to constitutional restraints and prohibitions; that it may not be declared void because a court may deem it opposed to natural justice and equity. * * * These principles have been frequently asserted in our courts and are so familiar that a reference to particular authorities is not thought needful. They are good and healthy rules and should be followed by all courts. At the same time, it must be remembered that the Constitution is the supreme law of the land, and that, when an act of the Legislature properly comes before the court to be compared by it with the fundamental law, it is the duty of the court to declare the invalidity of the act if it violate any provision of that law."

[3, 4] I deem it proper at this point to say that I wholly disagree with the inference or contention in the brief of the learned Attorney General which is based upon the statement that it is well settled that, where there is a right of appeal, no court should declare in the first instance a statute unconstitutional, but should leave the determination of that question to an appellate court. Such a rule is not sound in law. It is just as much the duty of the court of first instance to declare invalid and prevent clear violations of the Constitution by legislative enactment as it is the like duty of the court of last resort upon appeal, and this duty should not be evaded by the trial judge by casting the responsibility upon appellate tribunals. And equally is it true that, if the case be doubtful, neither the trial court nor courts of review should annul by judicial sentence, as repugnant to the Constitution, what has been enacted by the lawmaking power.

Without losing sight of these principles, I shall now consider the question whether the amendatory acts of the Legislature of 1911 are valid or not.

Counsel upon the hearing and in their exhaustive briefs have discussed at great length the respective rights, privileges, and powers of the County Court of Kings county and of the county clerk of Kings county and the historical and legislative sources of those powers; but, although the subject is an interesting one to the student of our judicial history, I do not deem it necessary to review it extensively at this time for the purpose of reaching a determination of this action. There are, however, certain statutes which bear upon the inquiry and which should be noticed.

For some years prior to the amendatory acts of 1911, the appointment of the chief clerk of the County Court of Kings county had been

vested in the judges of that court, pursuant to two acts of the Legislature. Chapter 612, Laws of 1902, and chapter 352, Laws of 1907. By the first of these acts the county judges of Kings county were given authority to appoint, besides other deputies and assistants, a chief clerk for the County Court of Kings county, to hold office for five years unless sooner removed at the pleasure of the judges of said court. Such chief clerk was to be a deputy of the county clerk of Kings county, to file with said county clerk a bond to be approved by him, and the compensation of such chief clerk was to be fixed by the judges of said court and to be a city charge, and such chief clerk was required to subscribe and file the constitutional oath of office; and to "act as a deputy of the clerk of Kings county at any sitting or term of the County Court with respect to the business transacted thereat, or which he may by said county clerk be specially deputized to do and perform." This act was expressly repealed by chapter 352 of the Laws of 1907, which latter act contained a re-enactment of similar provisions, except that such chief clerk could be removed only by the judges for cause after a hearing; his compensation was to be a county charge, and, in addition the duties prescribed by the former act for him and the other deputies and assistants, there were imposed "such other duties as the judges of the County Court may from time to time by their rules or otherwise, and not inconsistent with their duties as deputies and assistants of said county clerk, impose upon them."

As has been noted, Charles S. Devoy, who is the present County Clerk of the county of Kings, was appointed chief clerk of the County Court pursuant to the terms of the first of the acts last mentioned and served in that office for five years from November 7, 1902, and was again appointed on May 23, 1907, to the same office for a further term of five years under the second of said acts and continued therein until his resignation of the office on June 30, 1911.

[5] It is manifest that if it be true that the amendatory acts of 1911, which operated to restore the power of appointment to the county clerk of Kings county, violate the constitutional right of that official to appoint the chief clerk of the County Court, it must also be true that the two prior acts of 1902 and 1907, which deprived him of the appointive power and conferred it upon the judges of that court, must also have been void. This fact, significant though it may be deemed, as bearing upon the previous legislative, executive, and judicial attitude towards these alleged constitutional invasions under the earlier acts, is, nevertheless, not conclusive upon the issues in the case at bar, because, as suggested by the learned counsel for the defendant, the prior acts were never subjected to the constitutional tests which are now being applied to the acts of 1911.

[6] By the first of these later acts (chapter 640, Laws 1911), the provisions of sections 195, 282, 283, and 284 of chapter 30 of the Consolidated Laws, known as the Judiciary Law (a re-enactment of the above-mentioned act of 1907), were amended so as to confer upon the county clerk of Kings county the power to appoint, and "at his pleasure remove" a deputy to act and be known as the chief clerk for the County Court of Kings county, such appointee to "hold office for

the term of five years from the date of appointment unless sooner removed by the county clerk of the county of Kings for cause after trial upon charges duly served upon him." The act also provided that:

"The said chief clerk shall have all the powers and fulfill all the duties of the county clerk of Kings county at any sitting or term of the County Court with respect to the business transacted thereat, and he and his said deputies and assistants shall perform such duties as are now imposed upon them by law as deputies and assistants of said county clerk, and such other duties as the judges of the County Court may from time to time by their rules or otherwise, and not inconsistent with their duties as deputies and assistants of said county clerk impose upon them."

The second of these acts (chapter 826, Laws 1911), so far as it related to the office in question, merely struck out the provision in the prior act for the removal of the incumbent of such office at the pleasure of the county clerk. As to the deputies and assistants to said chief clerk, it canceled the requirement of the approval of their appointment and of the fixing of their salaries by the judges of the County Court, leaving these matters to be regulated by the county clerk alone.

The effect of this legislation of 1911 was therefore to restore to the county clerk of Kings county the absolute power of appointment to the office in question which he had possessed prior to the passage of the act of 1902. By the terms of these acts the Legislature deprived the judges of the County Court of the power which they had exercised for nine years under the prior acts and gave it again to the county clerk. The only vice, therefore, in the amendatory acts of 1911 which the county clerk could urge upon constitutional grounds, would be that the acts go too far in vesting him with the power of appointment, because of the fact that the restoration of appointing power is coupled with a condition that the appointment be for a five-year term; and hence any appointment made under them must, unless sooner terminated under the provisions of the acts, extend for five years, and thereby lap over the term of the successor of the county clerk, making such appointment, so as to deprive such successor of any power of appointment during his incumbency of that office. The defendant herein has received an appointment from the present county clerk of Kings county, who, if the acts under consideration are constitutional, has been deprived of the personal right to make such an appointment, and on this ground the defendant claims that the former county clerk could appoint to this office only during and for the period limited by his own term, which expired on December 31, 1911. With this contention I cannot agree. It is undoubtedly true that the office of county clerk of the county of Kings is a constitutional office, and it might be urged with much force, under some circumstances not present in this case, that an act which took or attempted to take away certain powers of the office would be invalid. The acts under criticism, however, do not take away—they restore powers which had previously been taken away. It is doubtless true that, by the means of the exercise of the power of appointment vested in his immediate predecessor in office, the present county clerk of Kings county has been shorn of a portion of his appointive power when the individual only is con-

sidered apart from the office which he holds. But this power of appointment is not conferred upon him nor upon any individual who may at any particular time fill the office. It is conferred upon the county clerk, virtute officii; one county clerk being the successor of another in unbroken continuity. The individuals holding the office of county clerk may change, but the office continues, and this power of appointment is incident to the office and not attached to the person of any particular incumbent thereof. For this reason I think the acts are valid.

Numerous are the illustrations in our political affairs of this principle of continuity in office resulting from a fixed term, notwithstanding changes of administrative heads. In fact, our civil service tenure of office is only another application of this principle to subordinate officers in government.

The fact that the present county clerk did not appoint the relator to the office of chief clerk of the County Court does not change in any legal respect the relations between the two officials in question. The latter will, so long as he holds the office, be the deputy of the former with the obligations and duties prescribed by law and by the statute under which he was appointed. If he, at any time during his five-year term, should vacate the office in any way, the county clerk at the time when such vacancy should occur would be vested with the power of appointment of his successor for the full term of five years thereafter. The power of appointment is incident to the office of county clerk to be exercised as the Legislature shall direct. Furthermore, even if the acts in question could not be sustained for the reason already assigned, they are valid because the defendant has failed to show conclusively that the amendatory acts of 1911 are in violation of any provision of the state Constitution, and this for the following reasons:

First. The acts under consideration do not deprive the county clerk of powers or privileges which have been exercised by his predecessors in office from time immemorial with respect to the County Court of Kings county, and this is so because that court, as now constituted, is not an ancient court, created at the time of the establishment of English government on Long Island, nor even at the time of the establishment of state government under the Constitution of 1777 and the ordinance adopted by the convention for organizing and establishing the same. The County Courts spoken of in that Constitution consisted of a first judge and other judges differing in number in the several counties, and appointed by the council of appointment. The present County Court of Kings county was a new court, organized under the Constitution of 1846, which provided as follows (article 6, § 14):

"There shall be elected in each of the counties of this state, except the city and county of New York, one county judge, who shall hold his office for four years. He shall hold the County Court, and perform the duties of the office of surrogate. The County Court shall have such jurisdiction in cases arising in justices' courts, and in special cases, as the Legislature may prescribe; but shall have no original civil jurisdiction, except in such special cases. The county judge, with two justices of the peace to be designated

according to law, may held courts of sessions, with such criminal jurisdiction as the Legislature may prescribe, and perform such other duties as may be required by law."

The County Courts thus created pursuant to the Constitution of 1846 were new courts of special and limited jurisdiction. See Frees v. Ford, 6 N. Y. 176, at page 178; and People v. Bradner, 107 N. Y. 1, at page 8, 13 N. E. 87.

The constitutional. argument, therefore, which rests upon the antiquity of the powers and functions of the county clerk, must, at least in so far as concerns the County Court and his relations to it, fall to the ground.

[7] Secondly. The Legislature has, under the Constitution, absolute power to regulate the manner of selection of the office of chief clerk of the County Court.

It was provided by the Constitution of 1846 (article 10, § 1) that clerks of counties and other specified county officers shall be chosen by the electors of the respective counties once in every three years and as often as vacancies shall happen. Section 2 provides:

"All county officers whose election or appointment is not provided for by this Constitution, shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the Legislature shall direct. * * * All other officers whose election or appointment is not provided for by this Constitution and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct."

The Constitution of 1894 and as now in force contains similar·provisions.

There can be no doubt that the chief clerk of the County Court is a county officer, nor can there be any doubt that under the provisions just recited the Legislature may direct how he shall be elected or appointed, and when, as was done by the acts of 1911, the Legislature declared that he should be appointed ·by a county authority, to wit, the county clerk, such declaration was well within the express powers conferred by the Constitution in that regard.

[8] Thirdly. It is suggested in the brief of the learned counsel for the defendant that the amendatory acts of 1911 are repugnant to some constitutional rights of the county clerk of Kings county to be himself chief clerk of the County Court.

It might be admitted that, if the Legislature had not passed the amendatory acts in question, nor the prior acts of 1902 and 1907, the county clerk would by virtue of his office be chief clerk of the County Court. But that is not the condition with which we are dealing. The Legislature in 1902 created the office of chief clerk of the County · Court as a distinct office, apart from but under the supervision of the County Clerk of Kings county, of whom the chief clerk was made a deputy. This was recognized by the present county clerk when he accepted such chief clerkship and served therein for nearly nine years, and it has been still further recognized by him since he became county clerk of Kings county on January 1, 1912, by his action on that day in appointing the defendant, John T. Rafferty, "to act and be known

as the chief clerk of the County Court of Kings county." It is also recognized as a separate office by the defendant by his action in accepting the same and in qualifying and serving therein according to the stipulation on the record which is to the effect:

"That on such date," i. e., January 1, 1912, "the respondent, John T. Rafferty, entered upon the duties of the office under his appointment, dated that day, and excluded from the discharge of the duties of such office the relator herein, and has ever since continued to possess, and discharge the duties of, such office to the exclusion of the relator herein."

By these acts both the defendant and the county clerk who appointed him are estopped in pais and by the record from maintaining that there is no such separate office as chief clerk of the County Court, apart from the office of county clerk of Kings county.

[9] In conclusion, I may add that in actions brought by and in the name of the people of the state, to test the right to hold a public office, the burden rests upon the defendant to show by what authority or warrant he holds or claims to hold such office. In the case at bar this burden has not, in my judgment, been met by the defendant, because he has failed to show conclusively that the amendatory acts of 1911 were in derogation of any right which he possesses under the provisions of the Constitution of the state; and, as has been shown, unless it be clearly established that a constitutional limitation or prohibition exists to prevent, the right and power of the Legislature to create, regulate, alter, or abolish public office is supreme and paramount and cannot be questioned in or out of the courts.

Judgment is therefore directed for the plaintiff as prayed for, with costs.