SYRACUSE AND SUBURBAN RAILROAD COMPANY, Plaintiff, *v.* CITY OF SYRACUSE, RICHARD B. WILLIAMS, JR., as Commissioner of Public Works of said City, and FREDERICK J. BAKER, Defendants.

(Supreme Court, Onondaga Special Term, August, 1920.)

Injunctions — when will be dissolved — city of Syracuse — street railways — railroads — constitutional law — Constitution, art. VIII, § 10.

The ordinance adopted August 11, 1919, by the common council of the city of Syracuse purporting to amend the franchise of the plaintiff, a street surface railroad company, and empowering the city to purchase the supplies and to perform the work by its commissioner of public works in the reconstruction and repairs of the tracks of said company and to assess the cost thereof to it as a local assessment to be paid in ten annual installments under section 16 of the city charter, as amended in 1917, is in violation of section 10 of article VIII of the Constitution of the state which declares that no city shall loan its money or credit to or in aid of any individual, association or corporation.

The purchase of new material for the repair of plaintiff's tracks is not for a "city purpose" within the meaning of the constitutional provision.

An injunction granted in an action to enjoin the city from interfering with the railroad tracks of plaintiff in the city unless the defendant shall reconstruct the roadbed and tracks of said plaintiff and assess the cost to plaintiff as provided by said ordinance, will be dissolved.

MOTION for temporary injunction.

Vann & Tuck, for plaintiff.

Edmund H. Lewis, corporation counsel, for defendants City of Syracuse and Richard B. Williams, Jr.

Ross, J.   The plaintiff, the Syracuse and Suburban Railroad Company, has brought this action to enjoin the defendant, the city of Syracuse, from interfering with its railroad tracks in East Fayette street in said city, and upon this motion seeks a temporary injunction for said purpose unless said defendant "shall carry out its representations and contract, and renew and reconstruct the roadbed and tracks of the plaintiff upon East Fayette street between South State street and South Crouse avenue, and assess the cost thereof to the plaintiff as a local assessment, to be paid in ten equal annual installments."

The questions presented here are of importance, not only because of the amount of money involved, but, what is even of greater importance, as defining the rights and liabilities of the defendant in this and other similar matters.

These matters have presumably received the closest study by the present corporation counsel's office and also by his predecessors in office, and also by the learned gentlemen representing the plaintiff railroad company, and the matter is presented to this court and by reason of the surrounding circumstances which have arisen, immediate decision is demanded.  This condition prevents a full elaboration of the case, and, what is more important, prevents the careful study which the importance of the questions involved would justify.

The claims of the plaintiff as to the necessity for resurfacing and widening the street in question, or the wisdom of such action at this time, is not a matter for this court.  As stated by Mr. Judge Hiscock, in the

case of *Admiralty Realty Co.* v. *City of New York,* 206
N. Y. 110, 125, " If the municipality and the various
officials acting in its behalf have the power to make
them (*i. e.,* proposed contracts), then the questions
whether it is wise to do so and whether their terms are
advantageous to the municipality and public, are solely
for the consideration and decision of those officials."

The situation presented in brief is as follows: The
plaintiff is a domestic corporation, duly organized for
the operation of a street surface railroad from the city
of Syracuse to a point in the town of Manlius. On
May 11, 1896, it obtained from the city of Syracuse a
franchise which granted it permission to construct and
operate said railroad upon East Fayette street. By
the provisions of said franchise, it agreed in part
" under the supervision of the Commissioner of Pub-
lic Works, pave and keep in permanent repair the por-
tion of every street and avenue between its tracks and
the rails of its tracks and a space of two feet in width
outside and adjoining the outside rails of its tracks,
so long as its tracks shall be used or kept in said street
or any part thereof. The portion of said street so to
be kept in permanent repair shall, unless otherwise
directed by the Common Council, at all times through-
out the length of said route be made to conform in the
manner and character of such pavement and the
material used therefor with the remaining portion of
said streets, and where such remaining portion is
macadamized or not paved at all, the portions so to
be kept in repair by said company shall at all times
be subject to the direction and control of the Common
Council and under the supervision of the Commis-
sioner of Public Works.  *  *  *  The said corpora-
tion, its successors or assigns, shall at all times be
subject to the control and direction of the Common
Council as to paving or repaving the portions of said

street to be kept in repair by said corporation, and shall place and keep such portions in proper condition and repair whenever and in such manner as the Common Council may from time to time direct and require." And other provisions specifying the authority of the common council to control and direct the construction of the street in question, and the duty of the defendant to obey the directions of the common council in this regard, and to make its tracks conform to the general plan of the street; and also contains the following provision in reference to widening the street: "And said company shall, at its own cost and expense, upon plans and specifications of the City Engineer and under the direction and supervision of the Commissioner of Public Works, widen the roadbed of said East Fayette street, three feet on each side of said roadbed, and repave and reset the curb and gutters upon and along the same from Grape street to Crouse avenue, the space left unpaved by the widening of the roadbed as aforesaid to be repaved with the kind and class of pavement and to conform to the pavement in the remaining portion of said roadbed so widened, and said work shall be done on or before the 1st day of December, 1897." This provision in reference to widening the roadbed was not performed, and it is conceded by the corporation counsel that such widening would destroy many valuable shade trees and is impracticable except to the extent of one and one-half feet on each side of the street.

On April 21, 1919, the common council of the defendant city adopted an ordinance relating to the resurfacing of East Fayette street, directing the city engineer to prepare plans and specifications and estimate of cost thereof, and on the same day, the said common council also adopted an ordinance relating to the widening of said East Fayette street, the last of which said ordinance is in the words following:

" Ordained, That the Commissioner of Public Works is hereby authorized and directed to order said Syracuse & Suburban Railroad Company to widen said East Fayette street one and one-half feet on each side thereof, making said street three feet greater in width from Grape Street to South Crouse avenue, and to pave said widened portion, and reset the curbs along said street, said work to be done in accordance with the plans and specifications of the City Engineer and under the direction of the Commissioner of Public Works, and at the cost and expense of said Syracuse & Suburban Railroad Company."

On August 11, 1919, the common council of the defendant city adopted an ordinance purporting to amend the franchise given to the plaintiff Syracuse and Suburban Railroad Company on May 11, 1916, which ordinance provided, with other matters, that when, in the judgment of the commissioner of public works, any portion of the tracks or roadbed of the railroad company require renewal or reconstruction, the commissioner of public works may serve notice in writing upon the railroad company requiring such railroad company to reconstruct such portion of its tracks or roadbed. Then follow provisions in regard to the length of time given in the first instance to the railroad company to so reconstruct its tracks and roadbed, and in the event that the railroad company neglects to so reconstruct its tracks, that " the city shall have the right, power and authority to renew or reconstruct, by contract or otherwise, the roadbed or tracks specified in the aforesaid written notice served upon the railroad company, and to do such part of the work incident thereto as the company has not elected to do within the time above stipulated, or which the company has failed to prosecute formally to completion, as the case may be, to charge the costs thereof at the contract price to the railroad company,

and upon the letting of the contract to assess the estimated cost thereof against the railroad company, with the same force and effect as though all the legal proceedings necessary for the levying of other local assessments had been taken and had; and such assessment, when levied, shall be collected by the city and paid by the railroad company in the same manner and subject to the same fees and penalties as other local assessments.'' The clause last quoted, that such assessment '' shall be collected by the city and paid by the railroad company in the same manner and subject to the same fees and penalties as other local assessments '' refers to the provisions of section 16 of the city charter, as amended by chapter 816 of the Laws of 1917, permitting any assessment levied for local improvements to be paid for in ten equal annual installments. The authority of the common council to enact the provision last above mentioned relative to postponing the time of payments in the case of the plaintiff is challenged by the defendant city in this case as being within the prohibition of article VIII, section 10, of the Constitution of the State of New York, to which reference will hereafter be made.

The plaintiff, the railroad company, claims that it accepted and acted upon the aforesaid ordinance of August 11, 1919, and that such acceptance became a law and in equity binding upon the city of Syracuse; that the defendant, the city of Syracuse, refuses to carry out the alleged agreement to reconstruct and renew the tracks of the plaintiff, and to collect the expense of the same in ten annual payments.

The plaintiff states that the expense of such reconstruction of the plaintiff's tracks and roadbed will cost $35,000, and that the additional cost of paving the railroad strip and widening the street, as required by the commissioner of public works, will cost approxi

3

mately $62,000, and that the financial conditions are such that it neither has nor can borrow funds for that purpose.

It appears from the affidavit of C. Loomis Allen, the vice-president of the plaintiff corporation, that on December 1, 1919, he wrote on behalf of the plaintiff corporation to the defendant, R. B. Williams, commissioner of public works, the following letter:

*" December* 1, 1919.

" R. B. Williams, Commissioner,

" Public Works,

" Syracuse, N. Y.:

" Dear Sir.— This will acknowledge your letter of November 20th in relation to the track and roadbed on East Fayette Street between State and Crouse Avenue.

" The Syracuse & Suburban R. R. Co. will furnish the rail for a straight track in this street and there will be required the following material to re-build and re-lay the track structure.

" 1. Special Work: Double track reverse curves full guard 9″ section.

" 2. Compromise joints, 12 pairs.

Rail joints and bolts, 210 pairs continuous 8 bolt.

" 3. Tie rods: 600 tie rods with bolts, extra heavy. Spikes: 18,000 — 5½ x 9-16 H. H. R. R. spikes. Ties: 3,000 — 6″ x 9″ x 8′ chestnut ties. Stone ballast — 2,000 cu. yds. Track Basins: as many as specified by the City Engineer.

" The writer will be glad to meet you at your convenience to discuss further details in relation to this matter.

" Yours very truly,

" C. Loomis Allen,

*" Vice President."*

Misc.]                Supreme Court, August, 1920.

The cost of such materials does not appear, but from the statement of the same official as to the total cost of reconstructing the track, we have the right to assume it will be a substantial sum.

It appears from the affidavits presented by the defendant city that no money has been raised by general city taxes or by general city assessment for the reconstruction or repair of the railroad tracks or roadway of the plaintiff railroad in East Fayette street in Syracuse; that there are no funds now in the custody of the city treasurer belonging to the city of Syracuse which are available for said reconstruction or repair of said railroad; and that it will be necessary, in order to establish any funds available for such purpose, that the city of Syracuse discount its certificate of indebtedness or sell its bonds and thereby incur the indebtedness of said city of the amount thereof; and it was stated upon the argument, and not disputed, that the present condition of the money market is such that it will be difficult for the city of Syracuse to borrow the amount necessary for such reconstruction upon advantageous terms as to interest.

As to the right of the city defendant to assume and incur the cost of such improvements and repairs and collect the same from the plaintiff corporation in ten annual payments, the claim of the plaintiff in brief is that it is the duty of the defendant city to care for and maintain its streets in a safe condition, and that the reconstruction of the plaintiff's tracks is only an incident to the performance of such duty; that the tracks' structure is an integral part of the pavement and that the fact that they have to be elevated or lowered or changed in position is only an incident to the repair of the street.

The claim of the defendant city is that the action contemplated under the ordinance of August 11, 1919,

is not a postponement of the payment of local taxes for the reconstruction and improvement of a street, but is a financing of this enterprise on behalf of the plaintiff, either by advancing the money or loaning its credit; that such advancement or credit necessarily contemplates, not only the reconstruction of the defendant's tracks, but requires the purchase of material for such reconstruction, either directly or indirectly, under the guise of a contract, in which the purchase price of such materials is necessarily included, and that this it has no right to do under the constitutional prohibition to which reference has been made, and which is as follows (Art. VIII, § 10) : '' No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of any association or corporation, nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes.''

Section 16 of the Tax and Assessment Act, constituting a part of the charter of the city of Syracuse, provides, with other matters, as follows: '' In case local improvement bonds shall have been authorized or issued for the purpose of defraying the expense of the improvement on account of which any such assessment shall have been made, any tax assessed thereunder may be paid in ten equal annual installments.''

It seems to me that a question is presented as to whether the provisions of this act apply to corporations whose only property in or adjacent to the street consists of a right to use it for a certain purpose. Undoubtedly the act was framed for the purpose of relieving adjacent property owners, whose property was subject to taxation for a local improvement, from

the hardship of having to pay a large sum immediately. Such tax, in any event, becomes a lien upon the property subject to taxation, and presumably (with some rare exceptions) its ultimate payment is fully secured; but in the case of a private corporation having simply a franchise, as for instance to operate a street surface railroad, electric subways, and other similar purposes, the postponement of a tax would simply be to incur a personal obligation on the part of the private corporation, subject, perhaps, to a lien upon its franchise and its assets, but as a security, is of an inferior character compared to a lien upon actual adjacent property. Assuming the constitutionality of the ordinance of August 11, 1919, the question presented in such case would be the right of the plaintiff to have the same action taken in regard to postponement of payments as to any other person subject to taxation for said improvement. But the question to which I address myself in this case is the authority of the common council, under the restrictions of the constitutional provision to which reference has been made, to purchase the supplies and to perform the work required by the commissioner of public works in the reconstruction and repair of its tracks on East Fayette street.

Is the purchase of new material for the repair of plaintiff's tracks a '' city purpose? '' I think not. In the case of *People ex rel. Murphy* v. *Kelly,* 76 N. Y. 475 (Brooklyn Bridge case), Judge Earl, writing for the court, on page 487, uses the following language: '' It is impossible to define in a general way with entire accuracy, what a city purpose is, within the meaning of the constitution. Each case must largely depend upon its own facts, and the meaning of these words must be evolved by a process of exclusion and inclusion in judicial construction. It would not be a city purpose

for the city of New York to build a railroad from that city to Philadelphia, or to improve the navigation of the Hudson river generally, between that city and Albany, although incidental benefits might flow to the city. Such works have never been regarded as within the legitimate scope of municipal government. On the contrary, it would be a city purpose to purchase a supply of water outside of the city, and convey it into the city, and for such a purpose a city debt could be created."

In *Matter of Niagara Falls & Whirlpool R. Co.,* 108 N. Y. 375, on page 385, Judge Charles Andrews, writing for the court, says: "What is a public use is incapable of exact definition. The expressions *public interest* and *public use* are not synonymous. The establishment of furnaces, mills and manufactures, the building of churches and hotels, and other similar enterprises, are more or less matters of public concern, and promote, in a general sense, the public welfare. But they lie without the domain of public uses for which private ownership may be displaced by compulsory proceedings."

It must be assumed that a railroad, in certain senses, is a highway. *Sun Printing & Pub. Assn.* v. *City of New York,* 152 N. Y. 257, 265. The question herein presented goes further than a determination whether the plaintiff's tracks constitute a public highway. The question is, is its physical possession and its legal rights in East Fayette street so incorporated physically and legally as to become a part of that street — an integral part of the street, so that the authority of the city of Syracuse in the exercise of its right to resurface and repair said street gives the common council of defendant city the right by resolution to lay the foundation for a liability to purchase, upon the credit of the defendant city, whatever supplies, rails, ties, etc., as may be nec-

essary to put the plaintiff's tracks in perfect condition. If the matter presented related only to a change of grade or the widening of the street, it may be that the tracks would, for that purpose, become such an integral part of the street that their readjustment in the course of repair of the street would be a city purpose. The plaintiff contends that a better job can be done if its entire roadbed, ties, etc., are reconstructed and replaced. True, perhaps, as far as the railroad company is concerned, but I assume that the city could resurface the street, if there were no railroad upon it, and that it can also, regardless of whether its foundation, rails, ties, etc., are new or old; whether of the latest design or antiquated; and it seems to me that the facts herein presented do not justify a finding that the purchase of equipment for plaintiff is in any sense a city purpose.

Suppose that the plaintiff, instead of having the right to use the street for a surface railroad, had the right under its franchise to use the street for the purpose of operating an elevated railroad, and the same question arose. In the case supposed, the defendant city would probably have the right to change the location of the supports of plaintiff's railroad, but the city would scarcely have the right, under the pretence of a " city purpose " to purchase or furnish new supports or foundations.

A privately owned street surface railroad is not an integral part of the street upon which it is operated. Its structure is in no sense essential to the proper construction of a street. In fact, it is usually a detriment and inconvenience to the construction and maintenance of a street. It is both legally and physically superimposed upon the street. It is subject to the control and management of individuals who are in no

Supreme Court, August, 1920.          [Vol. 113.

way connected with the control and management of the street. So far as its passengers are concerned, it alone is responsible for negligence in its construction or operation; and if, by reason of its negligence in the care and maintenance of its tracks, a person is injured, which negligence also produces a liability upon the part of the city which has permitted its operation, such liability arises, not because it is part of the street, but because it has injured the street by its presence. It is a private enterprise for gain which uses the street as a convenience. It has no control of the street as such, and in no sense, legally or physically, is it a part of the street except the fact that it is physically and continuously thereon.

I think that the contemplated purchase of materials for the repair of the plaintiff's track — material in no sense necessary for the construction of the street for the purposes of travel; material necessary to the construction and operation of the plaintiff's railroad; material which, when purchased and placed in position, would become the property of the plaintiff — is clearly in violation of the provisions of the constitution invoked.

Suppose that the plaintiff's vice-president, C. Loomis Allen, on December 1, 1919, instead of writing the letter heretofore quoted, had written that the plaintiff could furnish all the supplies stated in the aforesaid letter of December first, and was able to perform its charter obligations relative to repaving and widening the street, but that it was financially unable and could not, and would not, furnish the rails for the track in said street, and that the cost of same would be $50,000. Can it be seriously contended that any resolution which the common council had passed or could pass would justify the city of Syracuse in buy-

ing the rails which the plaintiff was unable to purchase?

I see little difference between a municipality attempting to purchase bonds of a railroad company (*Falconer* v. *Buffalo & J. R. R. Co.*, 69 N. Y. 491) and the attempted advance by a municipal corporation of money or credit to a street surface railroad company upon the security of the railroad company's liability for a tax for local improvements.

The cases cited by the attorney for the plaintiff are distinguishable. *Sun Printing & Pub. Assn.* v. *City of New York*, 152 N. Y. 257, held that the construction of railroads (in that case, a subway) by a municipality was a city purpose and not within the meaning of the prohibition in the Constitution.

This was followed in the case of *Admiralty Realty Co.* v. *City of New York*, 206 N. Y. 110, and this doctrine was applied to the facts presented in the last cited case, that the city also had the right to contract for building and equipment; that it could make arrangements for its subsequent operation; that it could make a subsequent arrangement for its joint operation with a corporation owning another system of subways, but Judge Hiscock, in commenting upon the various complicated transactions involved in this case, on page 136, used the following words: "I fail to see any gift or loan of money, property or credit by the municipality to the company within the words or spirit of the Constitution as interpreted by Judge Haight in the *Sun Printing & Pub. Assn.* case, for application to such a case as this."

*People ex rel. Simon* v. *Bradley*, 207 N. Y. 592. This was an application for a temporary writ of mandamus which presented the question as to the constitutionality of an act creating a railway terminal station com-

mission of the city of Buffalo, defining its powers and authorizing said city to issue its bonds. This was an attempt to agree upon a solution of the troublesome and difficult problems presented to populous and growing cities in the attempt to eliminate grade crossings. The difficulties to be solved were troublesome and quite complicated, and it would serve no useful purpose to attempt a statement of the facts therein presented. The language of Chase, J., who wrote the prevailing opinion, on page 611, says: '' It is claimed that the act permits, even if it does not require, the city of Buffalo to give or at least loan its credit in the purchase of real property to be used as the location for passenger and freight depots and other terminal facilities for the railroads. If such is the true construction of the act it is unconstitutional. I do not in anything I say intend to assert the contrary. I think the act can reasonably be construed as not including such authority.'' And again on page 619: '' I am of the opinion that the act does not contemplate the use of city money, directly or indirectly, for private purposes.'' And the decision rested upon this assumption.

Cullen, Ch. J., with whom concurred Gray and Willard Bartlett, JJ., dissented, holding that the act in question was in conflict with the provisions of the Constitution found in section 10, article VIII.

Although, in the view I take of the case, it is unnecessary to its decision, there are two incidental questions to which I will briefly refer:

*First.* If the defendant, the city of Syracuse, has any authority to purchase the supplies and to perform the work required by the commissioner of public works in the reconstruction and repair of East Fayette street, and to assess the same and collect as

other local assessments, it must be found in the provisions of the ordinance of August 11, 1919, and in the following language: " then and in either event (the failure of the company to perform), the city shall have the right, power and authority to renew or reconstruct by contract or otherwise the roadbed or tracks specified in the aforesaid written notice served upon the railway company.'' If a fair construction of this language would simply authorize the city of Syracuse to reconstruct the street in question, and to incidentally make such changes in the position of the tracks of the plaintiff as necessary to the general plan of reconstruction, then there is no authority given for the purchase of railway supplies; but, if the words " to renew or reconstruct by contract or otherwise the roadbed or tracks " fairly contemplate an entire renewal of the same if necessary, then, in such event, if the plaintiff railroad company were not able to furnish the necessary supplies, the terms of the ordinance would furnish the authority to purchase such supplies at however great an expense.

*Second.* The injunction sought to be retained prohibits the defendant city from removing or interfering with the tracks, ties and roadbed of the plaintiff on East Fayette street " unless the defendant city of Syracuse shall carry out its representations and contract and renew and reconstruct the roadbed and tracks of the plaintiff upon East Fayette street between South State street and South Crouse avenue, and assess the cost thereof to the plaintiff as a local assessment, to be paid in ten equal annual installments.'' It seems to me that this claim goes beyond the power of the court upon a motion to grant the relief sought. If the city is illegally interfering with the tracks of the plaintiff, it can be restrained; but

to direct that the city reconstruct its tracks upon an extended term of credit, assuming that the plaintiff has such right, it would seem that the court has no authority to determine the future action of the city, which action involves the performance of duties resting upon different officials, and to be determined upon facts hereafter to arise.

In holding that the ordinance passed by the common council of the city of Syracuse on August 11, 1919, and the contemplated action thereunder by which in fact the city of Syracuse proposes to loan its money and extend its credit to the plaintiff is in violation of the constitution of the state of New York invoked, I am not unmindful of the fact that, where two constructions of an act of the legislature are possible, that construction of the act should be given which holds the act to be constitutional. I do not forget that this principle is applicable in its full force to a court of first instance. I also have in mind the fact that a court can scarcely be called upon to enforce an act which is manifestly invalid (*People ex rel. Weil* v. *Hagan,* 35 Misc. Rep. 155) and that the duty of the trial court to declare statutes unconstitutional, if in violation of a fundamental law, should not be avoided by casting the responsibility upon the appellate tribunals. *People ex rel. Wogan* v. *Rafferty,* 77 Misc. Rep. 258.

An order may be prepared, dissolving the injunction, with ten dollars' costs.

Ordeied accordingly.