OPINION OF THE COURT
Herman H. Tietjen, J.
Defendant moves this court for a judgment declaring section 353 of New York’s Agriculture and Markets Law to be unconstitutional. This motion is being made pursuant to CPL 170.35 (subd 1, par [c]). The primary question presented here is: whether section 353 of the Agriculture and Markets Law is unconstitutional on the ground that the statute is too vague for the ordinary person to know what conduct is proscribed by the statute? The court holds that the statute in question is not unconstitutional.
Defendant is charged in an information filed in this court, that without provocation, and not in self-defense, he brutally beat a dog with a baseball bat on February 23, 1983. The supporting deposition attached to the information by a witness who observed the event states that she heard what sounded to be a dog fight. She looked out the window toward defendant’s residence and saw defendant come out of his house with a baseball bat. He “raised the bat above his head and hit Spunky in the back * * * Spunky tried to run away but got caught in Shana’s [female dog in *905 heat owned by defendant and tied outside] chain.” Defendant “continued hitting Spunky with the bat. I couldn’t believe it and I opened my window and leaned out and screaming at him to stop but he kept hitting Spunky. Even after Spunky was lying on the ground not moving, Bruce [the defendant] repeatedly hit him in the head and body with the baseball bat. He finally stopped hitting Spunky and he walked into the house.”
The statute which is the subject of this motion reads in part as follows: “A person who overdrives, overloads, tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether wild or tame, and whether belonging to himself or to another * * * or causes, procures or permits any animal to be overdriven, overloaded, tortured, cruelly beaten, or unjustifiably injured, maimed, mutilated or killed * * * or who wilfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal or any act tending to produce such cruelty, is guilty of a misdemeanor”.
In his application defendant sets forth three arguments: (1) That the statute is irreconcilable with the due process requirement since the series of acts specified in the introductory lines are not qualified while subsequent thereto they are qualified by the adverb “unjustifiably”. (2) That by virtue of the words “wilfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal” absent the adverb qualifier unjustifiably “prohibits virtually any and all human conduct” towards animals. (3) “That the Legislature did not know what the word ‘animal’ means * * * how is anyone to guess which animals are to be included?”
New York’s Cruelty to Animals Law had its genesis as section 185 in the Penal Law of 1909. Prior to that, it apparently was found in the Penal Code of 1881 as section 655. The constitutional challenge presented by the defendant appears to be a question of first impression. This writer is not able to find any written decision in New York which sustained the constitutionality of the statute, therefore it shall be necessary to study the decisions of some of our sister States regarding their judicial interpretations of similar statutes. At common law no protection was af *906 forded to animals against the cruelty of man (see People v O’Rourke, 83 Misc 2d 175; 3 NY Jur 2d, Animals, § 26, p 600; 4 Am Jur 2d, Animals, § 27, p .276). With the advent of the industrial revolution and heightened public concern for the welfare of animals, America’s laws were probably patterned after the English Cruelty to Animals Act of 1849. (12 & 13 Viet, ch 92; see State v Buford, 65 NM 51.)
We turn to defendant’s first objection which challenges the construction of the statute and questions whether it meets the due process requirements of the Fourteenth Amendment of the United States Constitution and section 6 of article I of the New York Constitution. Statutes enacted by the Legislature are presumed to be constitutional (Wasmuth v Allen, 14 NY2d 391, app dsmd 379 US 11). There exists a presumption in favor of constitutionality and when attacked this strong presumption must be overcome (see Lerner v Casey, 2 AD2d 1, affd 2 NY2d 355, affd 357 US 468) and courts of original jurisdiction should not set aside a statute as unconstitutional and unless the conclusion is inescapable (see People v Pagnotta, 25 NY2d 333; People v Cornish, 104 Misc 2d 72; Crotty v Town of New Windsor, 103 Misc 2d 378). Nonetheless, a court of the first instance should not forsake its responsibility to declare a statute unconstitutional if such declaration would prevent clear violations of the Constitution by legislative enactment (People ex rel. Wogan v Rafferty, 77 Misc 258, affd 154 App Div 767, revd on other grounds 208 NY 451).
New York’s current animal cruelty statute is similar to that found in other States. The statute links together a series of prohibited actions against animals. As part of its enactment the Legislature elsewhere in the same chapter defined its key terms. In King v State (75 Okla Cr 210) the Oklahoma Criminal Court of Appeals had an opportunity to pass on a statute strikingly similar to New York’s law. The statute found in section 1685 of title 21 of Oklahoma Statutes Annotated is therein quoted (p 211) as: “Any person who shall willfully or maliciously overdrive, overload, torture, destroy or kill, or cruelly beat or injure, maim or mutilate, any animal in subjugation or captivity, whether wild or tame, and whether belonging to himself or to another * * * or who shall cause, procure or permit any *907 such animal to be so overdriven, overloaded, tortured, destroyed or killed, or cruelly beaten or injured, maimed or mutilated * * * or who shall willfully set on foot, instigate, engage in or in any way further any act of cruelty to any animal, or any act tending to produce such cruelty”. In sustaining the statute the court noted that while the statute is loosely drawn, nevertheless it reveals its main purpose to punish those who are cruel to animals. The statute in King, as here, sets forth numerous prohibited acts of cruelty (see, also, Moore v State, 183 Ind 114).
Contained in the New York statute, as well as the Oklahoma law, is the act of cruelly beating or torturing an animal. The information and supporting deposition of the witness informs the defendant the crime with which he is charged. Certainly the word “cruelty” is one commonly known to an average person and it would be for a jury to determine whether the defendant acted in a cruel manner. Furthermore, the New York statute defines in subdivision 2 of section 350 of the Agriculture and Markets Law that “torture” or “cruelty” includes every act, omission, or neglect whereby unjustifiable physical pain, suffering or death is caused or permitted. “The test of cruelty is the justifiability of the act or omission” (see People v O'Rourke, supra, at p 178; People ex rel. Freel v Downs, 136 NYS 441). Thus, a person of ordinary intelligence could certainly, from the facts when adequately described, determine whether defendant’s act was prohibited and unjustified.
Indiana upheld the constitutionality of a statute similar to New York’s in Moore v State (183 Ind 114, supra). That statute also contained the words “cruelly beaten” and was structured similar to the Oklahoma and New York law by linking together various prohibited acts and situations of maltreatment. In approving the law the court noted its purpose was to provide a punishment for cruelty to animals and to make clear this general purpose it enumerated a series of acts or omissions which might constitute such cruelty. The court found that its phraseology was sufficiently definite to withstand the objection of indefiniteness and ambiguity. The statute the court construed (p 115) in Moore provided: “Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives *908 of necessary sustenance, cruelly beats, mutilates or cruelly kills or causes or procures to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated or cruelly killed, any animal; and whoever, having charge or custody of any animal, either as owner or otherwise, inflicts needless cruelty upon the same, or mutilates the same, or deprives it of natural means of defense or protection, or cruelly or unnecessarily fails to provide the same with proper food, drink, shelter or protection from the weather shall, on conviction”.
Defendant also attacks the statute on the ground that the term “unjustifiable” applies to only parts of the statute and not other parts. The terms “unjustifiably” or “unjustifiable” are used in connection with qualifying various parts of the statute, but not in any of its main roots. The word is used in conjunction with the words torture and cruelty in subdivision 2 of section 350 of the Agriculture and Markets Law and before the words injure, maim, mutilate and kill. This statute certainly leaves much to be desired from a draftsman’s point of view and the Legislature would be well advised to review it in order to give it a greater sense of clarity.
In order to understand the statute, one must consider the use of the word “or” and the application of commas. In the context of the statute the term “or” is used both as a disjunctive particle indicating the alternative sense and as a substitute for a comma seeking rather to serve as a connector of a series of words or propositions, presenting a choice of either (cf. NY Jur, Words and Phrases, p 520). The illusive comma is another question.
The comma has been defined as “a point used to mark the smallest structural divisions of a sentence” or “as a rhetorical punctuation mark indicating the slightest possible separation in ideas or construction” (Travelers’ Ins. Co. v Pomerantz, 124 Misc 250, 256). The court went on to note that the comma may be employed “as much for the purpose of grammatical construction as in respect to the ideas sought to be conveyed * * * In a document which contains punctuation marks, the words, and not the punctuation, are the controlling guide in its construction (Lambert v. *909 People, 76 N. Y. 220) * * * The sense of a writing is gathered from its words and their relation to each other, and after that has been done, punctuation may be used more readily to point out the division in the sentences and parts of sentences. But the words control the punctuation marks, and not the punctuation marks the words * *,* Punctuation in writings, therefore, may sometimes shed light upon the meaning of the parties, but it must never be allowed to overturn what seems the plain meaning of the whole document.” (Travelers’ Ins. Co. v Pomerantz, supra, at pn 256-257.)
Applying the foregoing to this statute, and giving to it a literal and logical meaning, the term “unjustifiably” as found in section 353 of the Agriculture and Markets Law applies to the words “injures”, “maims”, “mutilates” and “kills”, since by the varying nature of these prohibited acts it would be illogical to have them considered to be absolutes and without the right of the defense of justification. By virtue of the definition contained in subdivision 2 of section 350 of the same law this concept would also apply to the act of “torture” and “cruelty”. However, by definition, as noted by the court in People ex rel. Freel v Downs (supra, p 444) “[t]he torture that would justify a criminal prosecution must be some mode of inflicting bodily pain that is unjustifiable and unnecessary; but if the pain and suffering is temporary, unavoidable without criminal intent, and necessary to preserve the safety of the property involved and to overcome any danger or injury to such property, then it is not torture as that term is employed in legal parlance.” The question of fact as to whether the act of cruelty and infliction of pain was justified or whether the injury, maiming, etc., was unjustified is a question to be determined by the trier of facts and based upon the moral standards of the community (cf. People v O’Rourke, supra; People ex rel. Freel v Downs, supra; People v Semaszczuk, 294 NY 946; see, also, 4 Am Jur 2d, Animals, § 28, pp 277-280).
Briefly addressing defendant’s last contention concerning the meaning of the word “animal”, the Legislature did define the term in subdivision 1 of section 350 of the Agriculture and Markets Law: “ ‘Animal’, as used in this *910 article, includes every living creature except a human being”. In State v Buford (supra) the court noted that the term “Animal” has been given different definitions in various States. It said (p 52) “ ‘Animal’ has been defined to include ‘every living creature except men’ or ‘the human race,’ or ‘human beings’; ‘every living dumb creature;’ ‘the whole brute creation,’ or ‘any domestic animal.’” New York adopted what appears to be the broadest definition of the term. Nonetheless, when applying it to a given situation, a rule of reason must prevail and as with the other aspects of this statute, one must relate the term with the same frame of reference as an individual of ordinary intelligence.
This court holds that section 353 of the Agriculture and Markets Law is constitutional, although it is not well drafted. The defendant is amply informed of the prohibited activity and the statute contains provisions to allow the question of justification to be raised and considered. It sets forth a legitimate legislative activity in prohibiting the unjustified, needless and wanton inhumanity towards animals. The statute is not so broad that it fails to meet the standard of due process, yet it allows sufficient room for application to varied situations. Within its perimeters there is room for the expression of community standards and morals. Statutes similar to New York’s have been upheld as constitutional by other State courts and certainly represent a reasonable extension of the State’s police powers.