People v Caba (2024 NY Slip Op 50552(U))

[*1]

People v Caba

2024 NY Slip Op 50552(U)

Decided on May 9, 2024

Criminal Court Of The City Of New York, New York County

Brown, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 9, 2024
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Edwin Caba, Defendant.

Docket No. CR-700088-23CN

Michel Djandji, The Legal Aid Society
Assistant District Attorney Taylor Maurer, New York County District Attorney's Office

Marva C. Brown, J.

Edwin Caba, hereinafter "defendant," is charged with two counts of Agriculture and Markets Law § 353. By motion dated March 14, 2024, the defense moves to dismiss the accusatory instrument for facial sufficiency. The defense also moves by motion dated March 25, 2024, for an order deeming the People's November 22, 2023, certificate of compliance (COC) invalid and for this court to dismiss the accusatory instrument pursuant to CPL § 30.30. The People responded on April 9, 2024, and the defense submitted reply papers on April 12, 2024.
Upon review of the submissions, the Court file and relevant legal authority, the Defendant's motion to dismiss the accusatory instrument based on facial insufficiency is GRANTED. The defendants' remaining motions concerning the validity of the People's COC are rendered moot. FACIAL SUFFICIENCY
An accusatory instrument must allege "facts of an evidentiary character supporting or tending to support the charges (CPL 100.15[3]). The factual allegations in the information, together with any supporting depositions which may accompany it, must provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of such instrument (CPL 100.40[1][b] and 100.40[4][b]). "Reasonable cause to believe that a person has committed an offense" exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it (CPL 70.10[2]). 
A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to any criminal prosecution (People v Dreyden, 15 NY3d 100, 103 [2010]; People v Jackson, 18 NY3d 738, 741 [2012]; see also People v Alejandro, 70 NY2d 133, 135-36 [1987]). An information must contain nonhearsay factual allegations of an evidentiary character that, if true, establish "every element of the offense charged and the defendant's commission thereof" (CPL [*2]100.40[1][c]; People v Jones, 9 NY3d 259, 261-62 [2007]). A misdemeanor information serves the same role in a misdemeanor prosecution that an indictment serves in a felony prosecution; it ensures that a legally sufficient case can be made against the defendant (People v Dumay, 23 NY3d 518, 522 [2014]).
"So long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading" (People v Casey, 95 NY2d 354, 360 [2000]; People v Kalin, 12 NY3d 225 [2009]). While this "prima facie case requirement is not the same as the burden of proof beyond a reasonable doubt required at trial" (see People v Henderson, 92 NY2d 677, 680 [1999]), "conduct equally compatible with guilt or innocence will not suffice" (People v Vandover, 20 NY3d 235, 237 [2012]; People v Carrasquillo, 54 NY2d 248, 254 [1981]; see also People v DeBour, 20 NY2d 210, 216 [1976] ["We have frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause [i.e., or reasonable cause]").
In evaluating the sufficiency of an accusatory instrument, courts should not look beyond its four corners (including supporting declarations appended thereto) (People v Hardy, 35 NY3d 466, 475 [2020], citing People v Thomas, 4 NY3d 143, 146 [2005]). To the extent that errors exist in an accusatory instrument, "[i]t is the People's responsibility to obtain a sworn statement with the correct factual allegations and proceed on a superseding instrument" (id.). The Court of Appeals has held that where "it cannot be determined upon the face of the information whether the pleading is in compliance with CPL 100.40(1)(c), the information is subject to a motion to dismiss" (People v Casey, 95 NY2d 354 [2000]). 
Here, defendant is charged with violating two counts of Agriculture and Markets Law § 353, Overdriving, Torturing and Injuring Animals. The accusatory instrument is sworn to by Detective Natasha Yasin of the Special Investigations Division and states as follows: 
The defendant stated to me in sum and substance that he owns a male Pitbull named Koba as his pet and has owned Koba since December 2022. The defendant further stated to me in substance that on the evening of July 9, 2023, he left Koba alone on the rooftop of his apartment building at 1780 1 Avenue before he went to work for the night.
I am informed by Dr. Robert Reisman, who works as a doctor of veterinary medicine at the A.S.P.C.A., that on July 13, 2023, inside of the A.S.P.C.A. at 424 E 92 Street, he examined Koba and determined that both of Koba's rear legs had recently sustained fractures to the femur bones. I am further informed by Dr. Reisman that, based on his professional training and ten years experience working as a veterinarian, he believes the dog's condition is a result of blunt force trauma.
Agriculture and Markets Law § 353 (Overdriving, torturing and injuring animals; failure to provide proper sustenance) states, in part:
A person who overdrives, overloads, tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether wild or tame, and whether belonging to himself or to another, or deprives any animal of necessary sustenance, food or drink, or neglects or refuses to furnish it such sustenance or drink, or causes, procures or permits any animal to be overdriven, overloaded, tortured, cruelly beaten, or unjustifiably injured, maimed, mutilated or killed, or to be deprived of necessary food or drink, or who willfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal, or any act tending to produce such cruelty, is guilty of a class A [*3]misdemeanor and for purposes of paragraph (b) of subdivision one of section 160.10 of the criminal procedure law, shall be treated as a misdemeanor defined in the penal law.
Here, the defense argues that the accusatory instrument is facially insufficient because it fails to allege illegal conduct as well as reasonable cause that the defendant committed any crime. Specifically, the defense argues that the act of leaving a dog on a rooftop at night does not rise to the level of illegal conduct prohibited by the statute. The defense argues that absent additional facts about the conditions on the roof where the dog was left or the dog's condition when found, this could have been a perfectly safe and legal place for the dog to be. Further, without more, too many innocent inferences can be drawn from the facts alleged in the complaint. The defense also argues that there are no facts showing that the defendant exercised exclusive control over the dog, that he was even present when the dog sustained its injuries, or that the injuries were caused by neglect or abuse.
The People argue that "[v]iewing Dr. Reisman's conclusions in a light most favorable to the People, specifically that Koba's injuries were recently sustained and caused by blunt force trauma, a person of ordinary intelligence, judgement and experience would reasonably believe that the dog's injuries were caused by the dog's only alleged owner, rather than by accident or the dog itself." The People argue that the fact that the defendant caused this dogs' fractures "is especially true here, considering that the defendant had possession of the dog just a few days before Dr. Reisman's examination and left the dog presumably isolated from other dogs/people on the rooftop of an apartment building." The People argue that reasonable cause exists that the defendant was the cause of Koba's broken legs "as common-sense dictates that the fracture of not one but both femur bones — the strongest bones in the body — would require brute force." The People further argue that even if this court determines that there are insufficient facts alleged to show that the defendant caused the dogs' fractures, the defendant violated the statute by depriving the dog of proper sustenance, specifically veterinary care and adequate shelter to maintain the dog's health and comfort. The People argue that failing to seek medical care when there are clear, objective signs that the animal requires care constitutes a violation of the statute. 
This court finds that this accusatory instrument fails to establish reasonable cause that the defendant committed the charged offenses. As written, there are no facts to support a nexus between the dogs' fractures and any criminal conduct of the defendant. The defendant's admission that he left his dog on the rooftop at night while he went to work is woefully insufficient to show that he had anything to do with the dogs' injuries, which according to this complaint, were discovered four days later. There are no facts that the dog appeared to be in distress or pain when discovered on the roof, where one could reasonably conclude that the defendant even had knowledge of these injuries, let alone be the cause of these fractures. There are also no facts alleged to support the conclusion that the dogs' injuries presented themselves in any visible way, thus allowing one to conclude that the defendant ignored "clear, objective signs" and failed to seek medical care. There's nothing in the complaint explaining how the dog was found, who found him, what condition he was in at the time (i.e. without water, food, a place to sleep, etc.), or even who brought him to be examined by Dr. Reisman. The People's claim that Dr. Reisman's conclusions that the dogs' injuries were recently sustained and caused by blunt force trauma provide reasonable cause that the defendant caused the dogs' injuries is without merit. While this may be one conclusion to be drawn from the alleged facts, it is one in a list of many, including several other innocent explanations devoid of any criminal conduct on the part of the defendant. For these reasons, the facts describe conduct equally compatible with guilt or innocence, and therefore, cannot suffice to establish reasonable cause.
The prosecution cites People v Outerbridge, 51 Misc 3d 1210[A] [Crim Ct, NY County 2016], for the proposition that "[a] defendant's identity may be circumstantially pled, and such allegation will be sufficient as long as 'the court reviewing it finds that there is reasonable cause to believe that the offense or offenses charged occurred and that the defendant committed them.'" However, this case is unlike Outerbridge, where the defendant was charged with using the complainant's car without permission, and the complaint alleged that the defendant was the only other person with access to the complainant's car keys in his bedroom when they were discovered missing at 3 a.m., along with the car. Here, the fact that the defendant admitted to owning the dog does not mean that he had exclusive access to and/or control of the dog. Others may have had access to this dog—before, during and after his time on the roof. Another person could have caused this dog's injuries, either on purpose or by accident. And, without any facts to the contrary, it is possible the dog escaped and sustained injury unbeknownst to the defendant. Here, unlike Outerbridge, there are no facts alleged to establish the defendant's exclusive access to this dog that would allow a court to conclude that the defendant was the only individual who could have caused these injuries. 
This case is similar to Outerbridge in that the Outerbridge court found that the information was facially insufficient with respect to the charge for damaging the complainant's vehicle. The court found the facts in the complaint generated "two equally likely possibilities: either the defendant damaged the car during those two days [while the car was missing], while he was driving it without the owner's consent, or someone else damaged the car during those two days, after the defendant drove it without the complainant's consent" (Outerbridge at *4). The court reasoned that absent some fact making one possibility more likely than the other, the information was facially insufficient (id.). The same can be said here, where the factual allegations reasonably allow for more than just the possibility that the defendant caused this dogs' injuries and/or failed to get him medical attention in a timely fashion.
In their reply, the People repeatedly assume, presume and infer their own conclusions absent explicit facts or allegations in the accusatory instrument ("[the defendant] left the dog presumably isolated from other dogs/people on the rooftop of an apartment building", "[i]t can be reasonable inferred that such injury caused the dog to feel significant pain and affected its ability to walk properly", "the injury and pain would have been evident to the defendant", "rather than seeking medical treatment, the defendant chose to leave the dog on a rooftop alone overnight in the middle of the summer"). In doing so, they ignore the fact that one can assume, presume and infer completely alternative and innocent scenarios from these exact facts. On these facts, one could reasonably conclude that it was the defendant who discovered that someone had injured his dog upon returning from work, and then that the defendant then took the dog in treatment, where the fractures were revealed. Or that someone else came up to the roof and caused the dogs' injuries after the defendant left him with adequate food, water and comfort. Or that these injuries happened during the four days between when the dog was discovered to when the fractures were revealed. Or that the defendant had no idea or reason to believe his dog was injured at all. The list of possibilities goes on and on, and even post-Casey, a "fair and not overly restrictive or technical reading" would require more to support reasonable cause for the crimes charged than what is alleged in this complaint.
The People further argue that even if this court determines that there are insufficient facts alleged to show that the defendant caused the dogs' fractures, the defendant violated the statute by depriving the dog of proper "sustenance," specifically "veterinary care and adequate shelter to maintain the dog's health and comfort." Rather than support the facial sufficiency of this [*4]complaint, this argument highlights another fatal flaw in this accusatory instrument—it fails to give the defendant sufficient notice of what conduct he's alleged to have committed that is criminal under this statute so that he may prepare an adequate defense. The defendant is charged with two counts of Agriculture and Markets Law § 353, and the People begin their response by claiming the allegations support reasonable cause that the defendant caused the dogs' two fractures, presumably resulting in the two charged counts. But later, the People conclude that "whether the defendant intentionally broke the dog's legs or recklessly broke the dog's legs, or failed to seek shelter or medical care, all possibilities could reasonably be interpreted as violations of the statute." This statement essentially concedes that based on these allegations as charged, the People themselves remain unclear about what conduct they intend to prosecute. Do they plan to prove that the defendant caused the dogs' fractures? Do they plan to prove that the defendant failed to provide the dog with adequate shelter in putting him on the roof in the first place? Or instead that the defendant failed to seek medical care when he should have? Or all of the above? Or something else completely? Whatever the answer, it is not clear from this complaint what conduct the defendant must defend, and any belated clarification now cannot save this facially insufficient accusatory instrument.
Lastly, the People's argument that "factual issues of this nature render cases of failure to provide medical care to an animal under AML § 353 particularly unsuitable for determination on motion, and except in the most extreme cases, are best reserved for trial" is unpersuasive here. The cases cited by the People for this premise are all based on cases with accusatory instruments that describe far more egregious conduct than what is alleged against this defendant. In People v. Curcio, 22 Misc 3d 907 [Crim Ct, NY County 2008], the accusatory instrument included an admission by the defendant that he knew his dog had a mass but "did not and would not take the dog to the vet for medical attention," along with sworn factual allegations from a veterinarian that this failure then caused a life a life-saving surgery, six days of intensive care, and for the dog to "suffer needlessly." In People v. Bunt, 118 Misc 2d 904 [Rhinebeck Just Ct 1983], the defendant was alleged to have hit his dog with a baseball bat repeatedly and continued to do so even after the dog was lying on the ground no longer moving. Even worse, People v. Boelker, 172 Misc 2d 564 [Crim Ct, Kings County 1997] was based on an accusatory instrument that included allegations that the defendant "cut off the heads of three live, conscious iguanas without justification" (id. at 565). Here, the factual allegations that the defendant left his dog on the roof at night while he went to work, and that days later the dog was observed with two fractures in no way compares to facts alleged in these cited cases. Absent additional facts that demonstrate abuse or neglect, or an admission by the defendant either that he broke the dogs' legs and refused to treat him or knew the dog was injured but did nothing, this accusatory instrument is jurisdictionally defective and must be dismissed (see e.g. People v Walker, 80 Misc 3d 132[A] [App Term, 1st Dept 2023] [court dismissed for facial insufficiency stating, "While the complaint details the visibly compromised state of health and living conditions of the two dogs, it does not allege, and there is no basis for inferring, that defendant committed any affirmative act of physical abuse or passive conduct of neglect toward the dogs"]; People v Carr, 183 Misc 2d 94, 96 [Orchard Park Just Ct 1999] [court dismissed for facial insufficiency because there were no allegations that the defendant attempted to cause or actually caused physical injury to the dog when he kicked the dog two to three times and threw it to the ground]).
For these reasons, the accusatory instrument is facially insufficient.[FN1]

 SPEEDY TRIAL
Pursuant to CPL 30.30[1][b], when a defendant is charged with a misdemeanor punishable by a sentence of more than three months, the prosecution must be ready within 90 days from the commencement of that criminal action. To satisfy the initial burden under CPL 30.30, the defendant need allege "only that the prosecution failed to declare readiness within the statutorily prescribed time period" (People v Luperon, 85 NY2d 71, 77-78 (1995); see also People v Goode, 87 NY2d 1045, 1047 [1996]). Once the defendant has alleged that more than the statutorily prescribed time period has elapsed since the commencement of the action, the prosecution bears the burden of establishing sufficient excludable delay (see People v Berkowitz, 50 NY2d 333, 349 [1980]). Absent a facially sufficient accusatory instrument, a prosecutor cannot validly and effectually declare "readiness" for trial and thereby stop the speedy trial clock of CPL 30.30 (CPL 30.30[5-a]; see also People v Colon, 59 NY2d 921 [1983], rev'g for reasons stated at 110 Misc 2d 917, 919-920 [Crim Ct, NY County 1981] [ruling that the prosecution cannot be "ready" on an unconverted misdemeanor complaint]).
As discussed above, the People have yet to file a facially sufficient accusatory instrument, and any statements of readiness on this jurisdictionally defective instrument were illusory. Therefore, the People should be charged from August 25, 2023 — the day this case was filed — and March 14, 2024 — the day the defense filed their first motion to dismiss. (202 days charged)
As more than 90 chargeable days have accrued, defense counsel's motion to dismiss is GRANTED.

CONCLUSION
As outlined above, the court has reviewed the accusatory instrument and finds that it is facially insufficient. Based on the foregoing, the Defendant's motion to dismiss for facial insufficiency is GRANTED and this case DISMISSED.
This constitutes the Decision and Order of this Court.
Dated: May 9, 2024
HON. MARVA C. BROWN, JCC

Footnotes

Footnote 1: In the alternative, the defense argues that the People failed to plead a necessary statutory exception, thus rendering the accusatory instrument facially insufficient. This argument is rendered moot by this Court's decision that the accusatory instrument fails to establish reasonable cause that the defendant committed the charged crimes.